IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ADRIAN NICHOLSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:19CV490 |
| | ) | |
| TITLEMAX OF VIRGINIA, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Before the Court are Plaintiffs' motions to compel arbitration. (ECF Nos. 25; 34.) Plaintiffs allegedly entered into "car title loan" transactions with Defendants at unlawful rates of interest.[1] (*See* ECF No. 6.) They initiated this mass action in state court in order to: (1) prevent certain statutes of limitations from running; (2) obtain copies of their loan agreements from Defendants; and, (3) where applicable, enforce any arbitration agreements contained therein. (*See id.* ¶¶ 8–9; 48–49.)

After removing the matter to this Court, Defendants were ordered to turn over copies of any loan agreements between themselves and most individual Plaintiffs. (ECF Nos. 1; 14; 18.) The contracts produced thus far all contain arbitration clauses which, the parties and this Court agree, cover every facet of this dispute. (*See, e.g.*, ECF Nos. 2 at 6; 26 at 7.) On that basis, Plaintiffs now move to compel arbitration. (ECF Nos. 25; 34.) For the following

---

[1] A "car title loan" is a short-term loan product secured by a lien on the borrower's vehicle.

reasons, their request will be granted as to each Plaintiff for whom a contract has been identified; as to the remaining Plaintiffs, however, the request is denied without prejudice.

I. BACKGROUND

Plaintiffs contend that they borrowed money from one or more of the Defendants at annual interest rates that "far exceed the allowable rates of interest under North Carolina law." (ECF No. 26 at 2.) To that end, they have tried since last spring to arbitrate various state-law claims. (*See, e.g.*, ECF No. 6 ¶¶ 9, 48–49.) Lacking copies of their loan agreements, however, many of the Plaintiffs could not initially identify which specific lender-Defendant (all are named some variation of "TitleMax") had issued their loans.[2] (*See id.* ¶ 8.) It appears that the parties discussed tolling the applicable statutes of limitations until the relevant contract documents could be obtained, but failed to reach an agreement. (*See id.* ¶ 9; ECF No. 28 at 4.) Thus, to ensure that their claims would not expire, Plaintiffs filed this action in Guilford County Superior Court on May 3, 2019. (*See* ECF No. 6 ¶ 9.)

Despite their having initiated legal proceedings, it is clear to this Court that arbitration is, and always been, Plaintiffs' preferred forum. In their complaint, Plaintiffs asserted that each of the relevant loan agreements "contain[s] . . . an arbitration provision which cover[s] all of the[ir] claims" and requested that the presiding court "stay and refer this matter to individual arbitrations for each Plaintiff pursuant to the terms of the[ir] Agreement[s]." (*See id.* at 7.) A week after the complaint was filed, however, Defendants removed the case to this Court, answered, and asserted several related counterclaims. (ECF Nos. 1; 2.) In their answer,

---

[2] According to the complaint, these Plaintiffs did not have their contract documents "for a number of reasons—including them being in the glove compartments of cars hauled away by [Defendants]." (ECF No. 6 ¶ 8.)

Defendants admitted that "each of the agreements that exist between any Plaintiff and any Defendant contains an arbitration provision governing all the claims Plaintiffs assert." (ECF No. 2 at 6.) Nevertheless, Defendants resisted Plaintiffs' requests for copies of their loan agreements, urging each individual Plaintiff "to return to the TitleMax location in Virginia or South Carolina where they executed the agreement" in order to obtain their contracts instead. (*See* ECF Nos. 12 at 1; 28 at 5.) When some Plaintiffs did "inquire[ ] with the [relevant] TitleMax location[s] about fresh copies of [their] loan documents," the locations would not provide them. (*See* ECF No. 12-1.)

The parties appeared for an initial pretrial conference on July 24, 2019. Following that hearing, this Court ordered Plaintiffs' counsel to provide, "for in-camera inspection, the client/attorney representation agreements of all clients/Plaintiffs in this matter." (July 24, 2019 Text Order.) Through its review, the Court identified discrepancies in five representation agreements—either misspelled or inconsistently spelled names, or the lack of a complete signature. (*See* ECF No. 14.) However, for "all individually named Plaintiffs not . . . subject to th[ose] discrepancies," the Court ordered Defendants to "provide all TitleMax contracts for those individuals" within ten days.[3] (*Id.*) On August 23, 2019, Defendants certified that they had complied "by collecting and producing all contracts [they] could locate that are subject to the Court's . . . Order" and further promised to "supplement [their] production when and if [they] identifie[d] additional contracts." (ECF No. 15.)

The parties returned for a follow-up pretrial conference hearing on September 18, 2019. At the hearing, Plaintiffs' counsel presented to the Court corrected versions of the five

---

[3] In this and all other quotations, the capitalization of "TitleMax" has been corrected where necessary.

3

representation agreements that had been earlier identified as defective. (*See* ECF No. 18.) The Court reviewed those agreements and, finding them valid, ordered Defendants on September 19, 2019 to "provide all TitleMax contracts for *those* individuals" within seven days. (*See id.* at 2 (emphasis added).) On September 26, 2019, Defendants certified that they had "collected and produced all contracts [they] could locate" for those additional Plaintiffs. (ECF No. 22 at 1.)

Relying on the contract documents produced by Defendants, ninety-five of the named Plaintiffs moved to compel arbitration on September 30, 2019. (*See* ECF Nos. 25; 26-1; 26-6.) For the sake of efficiency, those Plaintiffs elected not to attach "all 837 pages of contracts" to their supporting briefs. (ECF No. 33 at 3.) Instead, they submitted a set of ten exemplar agreements, representing every "version[ ] of loan agreement[ ] presently before the Court." (ECF Nos. 26 at 4; 26-3.) Citing similar agreements, four additional Plaintiffs moved to compel arbitration on January 22, 2020.[4] (ECF Nos. 34; 35.)

## II. DISCUSSION

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, governs the rights and responsibilities of parties to an arbitration agreement. *See Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 204 (4th Cir. 2004). "The primary substantive provision of the FAA, § 2," expresses a strong policy in favor of arbitration: a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law

---

[4] Plaintiffs Jonathan Burke and Aimee Edwards joined in the September 30, 2019 motion to compel arbitration. (*See* ECF No. 26-1 at 2–3.) However, their names were misspelled in one of the accompanying exhibits. (*Id.*) "[O]ut of an abundance of caution," these Plaintiffs joined in the January 22, 2020 motion to compel as well. (*See* ECF No. 35 at 4.)

4

or in equity for the revocation of any contract." *Id.* (quoting 9 U.S.C. § 2). Accordingly, a party may obtain an order compelling arbitration and a stay of federal court proceedings if it can demonstrate:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [the opposing party] to arbitrate the dispute.

*Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (quoting *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002)); *see also* 9 U.S.C. §§ 3–4.

Although the "presumption in favor of arbitrability" is a "heavy" one, *see Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989), it is well-settled that a party "cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit," *see Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (quotations omitted). In this vein, Section 4 of the FAA provides that "[i]f the making of the arbitration agreement . . . be in issue, the [district] court shall proceed summarily to . . . trial." 9 U.S.C. § 4. However, to put the existence of an applicable arbitration agreement "in issue," the party opposing arbitration "must make an unequivocal denial that an arbitration agreement exists—and must also show sufficient facts in support" of its denial. *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015). If and when a district court becomes "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," it "shall" order arbitration. *See* 9 U.S.C. § 4.

Furthermore, a party with a valid arbitration agreement may lose its right to arbitrate if it is found to be "in default in proceeding with such arbitration." *See* 9 U.S.C. § 3. Statutory

5

default under the FAA is "akin to waiver, but not identical." *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 702 (4th Cir. 2012). That is because, "[u]nlike some waiver doctrines, 'the circumstances giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred.'" *See id.* (quoting *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985)). "[E]ven in cases where the party seeking arbitration has invoked the 'litigation machinery' to some degree," statutory default will not be found unless "the party objecting to arbitration has suffered *actual prejudice*.'" *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) (quoting *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir. 1987)).

Against this backdrop, Defendants make two main arguments in opposition to Plaintiffs' motions: (1) that Plaintiffs have not proffered sufficient evidence to prove the existence of valid arbitration agreements; and (2) that, regardless, Plaintiffs have forfeited any right to arbitrate by filing this action. The Court will address each argument in turn.

### A. Evidence of Arbitration Agreements

As stated above, this Court has ordered Defendants to produce "all TitleMax contracts for those individual[ ] [Plaintiffs]" now moving to compel arbitration. (*See* ECF Nos. 14; 18.) Defendants have certified to this Court that they have so complied. (*See* ECF Nos. 15; 22.) It is somewhat surprising, then, that Defendants now take the position that Plaintiffs' reliance on the documents *Defendants produced* "prevents [Defendants] from taking a firm position on whether [they] agreed to arbitrate claims with any given Plaintiff." (*See* ECF No. 28 at 11.)

Defendants are correct that a party "who seeks to compel arbitration under the Federal Arbitration Act bears the burden of establishing the existence of a binding contract to arbitrate

6

the dispute." *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 456 (4th Cir. 2017). However, they are wrong to assert that Plaintiffs have failed to carry their burden here—at least with respect to those Plaintiffs for whom contracts have been identified. In support of their motions, Plaintiffs direct the Court's attention to the following:

(1) Defendants' answer, in which they admitted "on information and belief that each of the agreements that exist between any Plaintiff and any Defendant contains an arbitration provision governing all the claims Plaintiffs assert." (ECF No. 2 at 6.)

(2) Defendants' notices of compliance, in which they certified to this Court that they had produced "all contracts between TitleMax and certain individually named Plaintiffs" that they could locate. (*See* ECF Nos. 15 at 1; 22 at 1.) Those contract documents were identified by Bates-stamp numbers TM-NICHOLSON-000001 through TM-NICHOLSON-000837. (*See* ECF Nos. 15 at 1; 22 at 1–2.)

(3) A spreadsheet summarizing the contract documents that were produced by Defendants. (ECF No. 26-1.) The spreadsheet lists each contract by Bates number, borrower-Plaintiff name, date of loan, loan amount, lender-Defendant name, and agreement type. (*Id.*)

(4) A set of ten exemplar agreements, drawn from the documents produced by Defendants in compliance with this Court's orders. (ECF No. 26-3.) The exemplar agreements reflect every agreement type present in the broader trove of contract documents. (*Compare id.*, *with* ECF No. 26-1.) Further, each exemplar agreement contains an arbitration clause reasonably covering all claims and counterclaims in this dispute:

   a. Five of the exemplar agreements have arbitration clauses reading: "For purposes of this . . . Arbitration Provision . . . the word 'dispute' and 'disputes' are given the broadest possible meaning and include, without limitation . . . all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Loan Agreement." (ECF No. 26-3 at 4, 7, 10, 14, 19.)

   b. Three others read: "In this Clause, '*Dispute*' has a broad meaning. '*Dispute*' includes all claims and disagreements related to my application, this Note, the Vehicle, the Loan, or my dealings with Lender." (*Id.* at 29, 36, 44.)

7

c. Another states that: "In this Clause, the word Disputes has the broadest meaning. It includes all claims related to your application, this Loan Agreement, the Vehicle, the Loan, any Other Loan or your relationship with us." (*Id.* at 23.)

d. A final includes the following: "Lender has a policy of arbitrating all claims, demands, and disputes which cannot be resolved in a General District Court, including the scope and validity of this Arbitration Agreement and any right Co-Owner may have to participate in an alleged class action." (*Id.* at 2.)

(5) Plaintiffs Jaquisha Davis, Robert Espinoza, and Melvin Wilson's loan agreements, which Plaintiffs say were only recently produced by Defendants. (*See* ECF Nos. 35 at 4–5; 35-3; 35-4; 35-6.) Defendants claim that portions of those contracts were actually produced earlier, but overlooked by Plaintiffs. (*See, e.g.*, ECF No. 43 at 5–8.) Regardless, the agreements contain arbitration clauses with language identical to that detailed in (4)a–b above. (*See* ECF Nos. 35-3 at 5; 35-4 at 5; 35-6 at 4.)

(6) Printouts from a North Carolina Department of Motor Vehicles ("NCDMV") website which appear to show that Defendant TitleMax of Virginia holds liens on the vehicles of two Plaintiffs for whom Defendants have yet to produce loan agreements—Demetrius Mayhue and Nicholas Jones.[5] (ECF No. 26-6.) Plaintiffs assert that Defendants "could not have recorded car title liens with the NCDMV unless [those] Plaintiffs had granted Defendants security interests in their motor vehicles" by signing loan agreements. (*See* ECF No. 26 at 12.)

With the exception of Plaintiffs Mayhue and Jones, for whom no contracts have been produced in this litigation, these materials credibly demonstrate that valid arbitration agreements exist for all moving Plaintiffs. Defendants fault Plaintiffs for not attaching each and every contract in support of their motions to compel. (*See* ECF No. 28 at 12.) However,

---

[5] Plaintiffs likewise present evidence of a lien on Plaintiff Angela Hobbs's vehicle, as Plaintiffs' "counsel has been unable to locate Ms. Hobbs['s] agreement in Defendants' production." (*See* ECF Nos. 35 at 5; 35-5.) However, Defendants have alerted the Court to the existence of a loan agreement between Angela Hobbs and Defendant TitleMax of Virginia, which was produced earlier, but overlooked by Plaintiffs. (*See* ECF No. 44-6.) That loan agreement contains an arbitration clause with language identical to that detailed in (4)a above. (*See id.* at 3.) The Court appreciates Defendants' helpfulness in identifying Ms. Hobbs's contract.

given the large volume of documents at issue, it was entirely appropriate for Plaintiffs to use exemplar agreements, alike in every meaningful way to their own specific agreements, to prove the existence of valid arbitration agreements.[6] *See, e.g.*, *Danley v. Encore Capital Grp., Inc.*, 680 F. App'x 394, 397 (6th Cir. 2017) (affirming district court's reliance on exemplar agreement in granting motion to compel arbitration). Nor is the Court persuaded that it cannot consider the evidence here due to a lack of formal authentication by Plaintiffs. (*See* ECF No. 28 at 12.) Defendants' own admission (any contracts that exist contain valid arbitration agreements covering the dispute at hand) and certifications (the contracts produced are those belonging to the individual plaintiffs in this case) endow the contracts here with sufficient reliability. To entertain the alternative—that, contrary to their certifications to opposing counsel and this Court, Defendants have produced contracts that *may or may not* belong to the moving Plaintiffs—would be to accept that Defendants have made a significant misrepresentation and failed to comply with this Court's orders. The Court will instead take Defendants at their word. (*See* ECF Nos. 15; 22.)

Against this compelling evidence, Defendants have neither "unequivocal[ly] deni[ed]" the existence of valid arbitration agreements between themselves and the moving Plaintiffs nor offered any of their own evidence that would put the existence of the arbitration agreements "in issue." *See Chorley*, 807 F.3d at 564. Thus, for those individuals with contracts produced in this case, the Court "is satisfied that the parties agreed to arbitrate" and will order

---

[6] Plaintiffs have offered to provide the Court with copies of all contracts produced in this case if needed. (*See* ECF No. 26 at 5 n.3.)

arbitration. *Lorenzo v. Prime Commc'ns, L.P.*, 806 F.3d 777, 781 (4th Cir. 2015) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010)).

Whether arbitration should likewise be compelled for Mayhue and Jones is a closer question. As far as the Court is aware, the parties have not yet located contracts for these Plaintiffs. However, the liens on their vehicles are a strong indication that these Plaintiffs have loan agreements with Defendant TitleMax of Virginia. Further, Defendants' admission and the many contracts that *have* been produced suggest that any loan agreement issued by a Defendant in this case would likely contain a similarly expansive arbitration clause. Nevertheless, Plaintiffs have not yet done enough to prove, to this Court's satisfaction, the existence of valid arbitration agreements for Mayhue and Jones. "[A]rbitration," after all, "is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). Without more, the Court cannot be confident that the terms it is enforcing are real or correct. One solution, of course, is for Defendants to again diligently search for these contracts and, if found, produce them. Or, the parties could simply agree to arbitration. Barring those alternatives, Plaintiffs may still prove the existence of the arbitration agreements for Mayhue and Jones by submitting further evidence of (a) Defendants' business practices—showing, for instance, whether their use of arbitration clauses was truly universal at the time the alleged agreements with Mayhue and Jones would have been made—and (b) whether the liens on their vehicles could not have been obtained by some other means. *See, e.g.*, *Marcario v. Midland Credit Mgmt., Inc.*, No. 2:17-cv-414 (ADS)(ARL), 2017 WL 4792238, at *4 (E.D.N.Y. Oct. 23, 2017) (finding that "multiple affidavits" attesting that exemplar agreement "contained the same terms and conditions that

governed the [p]laintiff's account when the account was active" provided sufficient evidentiary basis on which to compel arbitration).

### B. Statutory Default and Breach of Contract

Defendants also argue that, even if Plaintiffs have provided adequate evidentiary support for their motions to compel, they "forfeited any right to arbitrate by filing this lawsuit." (ECF No. 28 at 16.) A party may be in statutory default of its right to arbitrate if it has "so substantially utilize[d] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing [arbitration]." *See MicroStrategy, Inc.*, 268 F.3d at 249 (quoting *Maxum*, 779 F.2d at 981). However, the movant will not be found "in default" unless the opposing party has suffered "*actual prejudice*." *See id.*

Two primary factors guide the Court's determination as to whether a party has suffered actual prejudice in this context. *Rota-McLarty*, 700 F.3d at 702. First, the Court must consider "the amount of [any] delay" on Plaintiffs' part in pursuing arbitration. *Id.* As detailed above, any delay here has been minimal: Plaintiffs sought an arbitration order immediately upon the filing of their complaint in state court and filed their motions to compel in this Court shortly after receiving their loan agreements from Defendants. The second factor in the prejudice inquiry is "the nature and extent of [Plaintiffs'] litigation activities." *See id.* at 704. "Where a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised." *Fraser*, 817 F.2d at 252 (quoting *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1161 (5th Cir. 1986)). In this case, however, Plaintiffs have done just the opposite. Far from avoiding

11

arbitration, or even mulling over their options, Plaintiffs have consistently insisted upon arbitrating, rather than litigating, their individual claims.

Relatedly, Defendants contend that Plaintiffs materially breached their arbitration agreements by filing this action, thereby waiving any right to arbitration. The Court agrees with Plaintiffs that this argument is misplaced. Per the FAA, "courts can investigate the existence of 'such grounds as exist at law or in equity for the revocation of any contract,'" so long as those grounds "relate specifically to the arbitration clause and not just to the contract as a whole." *See Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999) (citing 9 U.S.C. § 2; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–04 (1967)). On this point, Defendants appear to argue the following: if Plaintiffs had valid loan agreements, then those agreements required them to pursue their claims in arbitration, not in court; thus, in bringing this action, Plaintiffs materially breached their own agreements and, under the applicable state law governing each agreement, are not entitled to enforce them. (*See* ECF No. 28 at 16–21.) What this reasoning omits, however, is that Plaintiffs filed this action not as an alternative to arbitration, but for the very purpose of facilitating it. (*See* ECF No. 6 ¶¶ 9.) Defendants cite no case in which a Plaintiff was held to have materially breached an arbitration agreement governed by the FAA by filing suit to obtain copies of their contracts in order to compel arbitration. In light of the strong federal policy favoring arbitration, the Court declines to so hold here.

In sum, Defendants have failed to demonstrate actual prejudice and thereby meet their "heavy burden to prove default." *See Rota-McLarty*, 700 F.3d at 702. Likewise, the Court does not find that Plaintiffs have waived their right to arbitrate by filing this action.

For the reasons stated herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Plaintiffs' September 30, 2019 Motion to Compel Arbitration, (ECF No. 25), is GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED as to all Plaintiffs for whom a loan agreement has been identified. As to those Plaintiffs only, arbitration is compelled pursuant to 9 U.S.C § 4 and this action is hereby stayed, pending the resolution of arbitration in accordance with the parties' arbitration agreements. The Motion is DENIED without prejudice as to those Plaintiffs for whom a loan agreement has not yet been identified.

IT IS FURTHER ORDERED that Plaintiffs' January 22, 2020 Motion to Compel Arbitration, (ECF No. 34), is GRANTED.

IT IS FURTHER ORDERED that counsel shall file a joint status report of arbitration every ninety (90) days and notify the Court of any arbitration awards within seven (7) days after arbitration has concluded. Failure to file such reports may result in dismissal.

This, the 22nd day of April 2020.

/s/Loretta C. Biggs
United States District Judge